

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-26-00150-CV

**IN THE INTEREST OF A.C.L.B.**, a Child

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2025-PA-00513
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Velia J. Meza, Justice

Sitting:        Lori I. Valenzuela, Justice
                Adrian A. Spears II, Justice
                Velia J. Meza, Justice

Delivered and Filed: August 5, 2026

AFFIRMED

Appellant C.A.L. (Father) appeals termination of his parental rights to his child, A.C.L.B.[1]

Following a bench trial, the trial court found that he endangered the child (subsections (D), (E) &

(O)) and constructively abandoned the child (subsection (N)), and terminated his rights. *See* TEX.

FAM. CODE § 161.001(b). On appeal, Father challenges the sufficiency of the evidence supporting

the (D), (E), and best interest findings. He does not challenge the (N) and (O) findings. Because

the evidence is sufficient to support the trial court's findings, we affirm.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and we refer to any children using their initials or as the "child" or "children." *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

This case arises from the removal of A.C.L.B., an infant, after law enforcement responded to a domestic dispute in which Father and Mother were arguing while Mother held the baby. Father was arrested. Testing confirmed that both parents and the child were positive for methamphetamines. The Department of Family and Protective Services first attempted to address the family's safety concerns through Family-Based Safety Services, but those efforts failed to resolve the underlying risks. During that period, the Department received an additional report that Mother had called the child the "spawn of Satan," made suicidal statements, and appeared to be under the influence while caring for him. Father was also subject to a no-contact order with respect to Mother at that time. The trial court authorized the child's emergency removal on April 7, 2025. When Department workers effectuated the removal, Mother became combative and had to be removed from the scene by police.

Mother's condition deteriorated in the weeks that followed. According to Mother, she was arrested after fighting with her brother in which she "bit" him. This occurred in front of Mother's eldest daughter. Mother was ultimately jailed and transferred to a dual-track mental-health and substance-use program. Communication between Mother and her caseworker were restricted throughout this period, and even more so when Mother was placed on suicide watch.

While A.C.L.B. was initially placed with a foster family, he was eventually placed with a maternal cousin on April 18, 2025. In the kinship placement, A.C.L.B. adjusted well, received updated immunizations and Early Childhood Intervention services, and appeared bonded to his caregiver. After completing the licensing process in January 2026, the Department identified the cousin as the preferred adoptive placement if parental rights were terminated.

Father participated in developing a court-ordered family service plan. The Department's initial goal was reunification, with a concurrent plan of relative adoption, and Father was advised that insufficient progress could lead to termination. Despite this, Father's actions throughout the case led the Department to seek termination.

A two-day bench trial began on January 27, 2026. At trial, it was established that at the onset of Father's case, he was on bond for three felonies—endangering a child, assault family violence against Mother, and possession of methamphetamine. These bond conditions also prohibited him from contacting both Mother and A.C.L.B. In spite of the no-contact order, the Department presented evidence that on December 25, 2025, police responded to Father's residence and Mother was asked to leave. A.C.L.B.'s paternal grandfather also testified that the parents continued to see each other in person and that he witnessed them boarding a bus together after the first day of trial.

The Department also presented evidence that Father admitted to a caseworker that he had a history of using methamphetamine, cocaine, and marijuana. Although he completed a drug treatment course, he continued to test positive for methamphetamines and other substances throughout the case. And while Father completed parenting and domestic-violence classes and a psychological evaluation, he missed multiple therapy sessions and drug tests. Throughout the case, Father lacked stable employment and lived with his mother.

At the close of evidence, the trial court terminated both parents' rights under Texas Family Code § 161.001(b)(1)(D), (E), (N), and (O), and appointed the Department as managing conservator. This appeal followed.

**DISCUSSION**

Father challenges the legal and factual sufficiency of the evidence supporting the subsection (D), (E), and best interest findings.

## 1    Standard of Review

A suit for termination of parental rights is of constitutional dimension. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). But a parent's rights "are not absolute," and "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Termination requires clear and convincing evidence, a more demanding standard than the preponderance-of-the-evidence standard that ordinarily governs conservatorship decisions. *See* TEX. FAM. CODE §§ 161.001(b). Appellate review of termination findings is correspondingly more stringent. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024) (per curiam). Clear and convincing evidence is proof that produces in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

In our legal sufficiency review, we view the evidence in the light most favorable to the trial court's findings. *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024). The factfinder is the sole judge of witness credibility and evidentiary weight, *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009), thus

we defer to those determinations so long as they are not unreasonable. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). We must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We disregard contrary evidence that a reasonable factfinder could have disbelieved, but we do not disregard undisputed evidence even if it does not support the finding. *Id.*; *C.E.*, 687 S.W.3d at 308.

In our factual sufficiency review, we consider the entire record and ask whether any disputed evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *J.F.C.*, 96 S.W.3d at 266.

## 2    Predicate Grounds

In his first two issues, Father challenges the sufficiency of the evidence supporting the trial court's findings under (D) and (E). Only one predicate ground is necessary to support termination when accompanied by a best-interest finding. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Father does not challenge the trial court's (N) and (O) findings. Nevertheless, because findings under subsections (D) and (E) may serve as a basis for terminating a parent's rights to other children under subsection (M), due process requires us to review those findings when challenged on appeal. *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam).

To endanger a child under either (D) or (E) means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Endangerment does not require conduct directed at the child or actual injury to the child. *J.W.*, 645 S.W.3d at 748.

Although subsections (D) and (E) both address endangerment, they differ in focus. Subsection (D) concerns the child's living environment—including parental conduct that renders that environment dangerous—and permits termination based on a single act or omission. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *In re R.D.*, 955 S.W.2d 364, 367–368 (Tex. App.—San Antonio 1997, pet. denied). The relevant time period under subsection (D) is when a parent has custody or possession of the child—generally only prior to removal. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Subsection (E), by contrast, focuses on the parent's conduct—regardless of custody or possession—and requires a conscious course of conduct rather than a single act or omission. *J.T.G.*, 121 S.W.3d at 125. Courts may consider conduct under (E) that occurred outside the child's presence, before the child's birth, or after removal. *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *3 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.). "Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re D.F.S.*, No. 04-20-00441-CV, 2021 WL 603364, at *4 (Tex. App.—San Antonio Feb. 17, 2021, pet. denied) (mem. op.) (citation modified).

### 2.1 Application

The evidence of endangerment was substantial. Father and Mother engaged in domestic violence while their infant son was present, prompting the Department's initial involvement. *See In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.) (discussing Texas courts' routine consideration of evidence pertaining to parent-on-parent physical abuse in termination cases without specifically requiring that it resulted in a criminal conviction). Shortly after Father's arrest for that incident, A.C.L.B.—then seven months old—tested positive for methamphetamines. *See In re J.S.*, 675 S.W.3d 120, 129 (Tex. App.—Dallas 2023, no pet.)

(finding that an infant testing positive for methamphetamine is evidence of endangerment). Father's conduct directly exposed his infant son to domestic violence, illegal drugs, and criminal activity, with immediate and measurable consequences. The evidence is legally and factually sufficient to support the trial court's finding under (D). *See N.G.*, 577 S.W.3d at 235.

The evidence also supports the (E) finding. Throughout the pendency of this case, Father remained subject to a no-contact order arising from pending felony charges that included child endangerment and family-violence assault, yet he continued to have in-person contact with Mother. He completed drug treatment but continued testing positive for methamphetamines and other substances. He missed multiple drug tests and therapy sessions and failed to achieve stable housing or employment. Father acknowledged that exposing a child to domestic violence and drug abuse is harmful and that his own methamphetamine use was harmful to A.C.L.B., yet he denied responsibility for the conditions that led to removal and offered shifting explanations for the child's positive drug test. This pattern of conduct—spanning the period before removal through the date of trial—supports the conclusion that Father engaged in a course of behavior that endangered the child's physical and emotional well-being. *See R.S.-T.*, 522 S.W.3d at 110; *J.O.A.*, 283 S.W.3d at 345. The evidence is legally and factually sufficient to support the trial court's finding under (E). *See N.G.*, 577 S.W.3d at 235. We overrule Father's first and second issues.

### 3 Best Interest

Father argues in his third issue that the evidence is legally and factually insufficient to support the trial court's best-interest finding. We disagree. We analyze best interest using the non-

exhaustive Holley factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re M.N.R.*, 719 S.W.3d 647, 657–58 (Tex. App.—San Antonio 2025, pet. denied).

### 3.1.1 *Holley* Factors

**Desires of the Child.** The evidence showed that A.C.L.B. was "very attached" to his current kinship caregiver. In contrast, due to the child's young age and the terms of Father's pretrial bail prohibiting conduct, there was no affirmative evidence of the child's bond with Father. This factor is somewhat neutral.

**Emotional and Physical Danger to the Child Now and in the Future.** A.C.L.B. was removed as a result of Mother and Father's instability, criminal activity, and drug use. While Mother's "mental breakdown" was the immediate cause of removal, Father's actions directly led to this result. He was arrested for a domestic violence incident that resulted in criminal charges, including child endangerment, and a no-contact order prohibited him from interacting with Mother and A.C.L.B. Furthermore, Father admitted to using methamphetamine and, on the day he was arrested, his infant son tested positive for that very drug. These factors weigh strongly in favor of the trial court's best interest determination.

**Present and Future Physical and Emotional Needs, Parental Abilities, Programs Available, Stability of the Home or Proposed Placement, and Plans for the Child.** Other than his tender age, there was no evidence that A.C.L.B. possessed any special physical or emotional needs. No evidence was presented regarding Father's plans or preparation if the child were returned to his care. However, Father's continued instability while his parental rights were at risk suggests that he may not be an appropriate caregiver for a young child, who at the time of trial was just entering toddlerhood. While Father engaged in some services—domestic violence and drug

treatment—he continued to test positive for illegal drugs, miss drug tests, and met with Mother all in violation of his pretrial bail conditions. Father lived with his own mother throughout the case and experienced persistent difficulty finding work due to his criminal history and bail conditions—specifically, the requirement to wear a conspicuous ankle monitor.

In contrast to Father's story, A.C.L.B. had, for the majority of the case, lived in a kinship placement with Mother's cousin. The child was bonded to his caregiver and all his educational and medical needs were being met. The caregiver became licensed and, by the time of trial, was prepared to adopt A.C.L.B. These factors weigh in favor of the trial court's best interest finding.

**Acts or Omissions Indicating Parent-Child Relationship is Improper, and the Parent's Excuse for the Acts or Omissions.** Father's conduct exposed A.C.L.B. to violence, criminal activity, and drug use before the child was even a year old. When confronted at trial with evidence of his child's positive methamphetamine test, Father denied any drug use and explained that he "was around other people that would honestly use it." He testified that he "thought [he] was doing good" and that "[t]here was no child endangerment or anything like that was going on." The trial court, as factfinder, could reasonably disregard these explanations as implausible. *See J.P.B.*, 180 S.W.3d at 573. Father's minimization of documented conduct and his refusal to accept responsibility support the trial court's best-interest determination.

### 3.1.2  Conclusion

We must assume the trial court resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *J.F.C.*, 96 S.W.3d at 266. Father's drug use, violence, and criminal activity persisted throughout the case and remained unresolved at the time of trial. The evidence is legally

and factually sufficient to support the trial court's finding that termination of Father's parental rights is in A.C.L.B.'s best interest. We overrule Father's third issue.

## CONCLUSION

Having overruled each of Father's issues, we affirm.

Velia J. Meza, Justice